1  J. Noah Hagey, Esq. (SBN: 262331)
        hagey@braunhagey.com
2  BRAUNHAGEY & BORDEN LLP
   351 California Street, 10th Floor
3  San Francisco, CA 94104
   Telephone: (415) 599-0210
4  Facsimile: (415) 276-1808

5  Mitchell C. Stein (*pro hac vice* pending)
        stein@braunhagey.com
6  Kirsten Jackson (*pro hac vice* pending)
        dooley@braunhagey.com
7  BRAUNHAGEY & BORDEN LLP
   118 W. 22nd Street, 12th Floor
8  New York, NY 10011
   Telephone: (646) 829-9403
9  Facsimile: (646) 829-9403

10 ATTORNEYS FOR PLAINTIFF
   TARI LABS, LLC

11

12

13                **UNITED STATES DISTRICT COURT**

14                **NORTHERN DISTRICT OF CALIFORNIA**

15

16

17  TARI LABS, LLC,                         Case No. 4:22-cv-07789

18           Plaintiff,                     **COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

19      v.

20  LIGHTNING LABS, INC.,                   **JURY TRIAL DEMANDED**

21           Defendant.

22

23

24

25

26

27

28

Plaintiff Tari Labs, LLC ("Tari Labs") brings this action for trademark infringement and related causes of action against Defendant Lightning Labs, Inc. ("Defendant") and alleges as follows:

## INTRODUCTION

1. Plaintiff Tari Labs is a technology company headquartered in Oakland, California, that is developing an innovative blockchain platform for the issuance of a wide range of digital assets. Tari Labs owns the federally registered trademark TARI® and brings this action against its competitor, defendant Lightning Labs ("Defendant"), to remedy and enjoin Defendant's recent adoption of the confusingly similar name "TARO" for one of its blockchain technologies. The parties compete in the same digital blockchain ecosystem, provide similar, and in some instances identical, goods and services, market to similar developers and users, and appear on the same blockchain platforms. Tari Labs notified Defendant of its infringing use of the TARI® trademark, but Defendant elected to continue using, advertising and implementing the TARO trade name for its competing blockchain technology.

2. Through this action, Tari Labs seeks to halt Defendant's willful and infringing use of TARO, which is likely to confuse users and developers who wish to join the TARI® developer community, and cause injury to its brand, reputation and goodwill.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 15. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district under 28 U.S.C. § 1391 and 15 U.S.C. § 22, because a "substantial part of the events or omissions" on which the claim is based occurred in this district.

# THE PARTIES

## A. Plaintiff

5. Plaintiff Tari Labs, LLC is a limited liability corporation headquartered in Oakland, California and organized under the laws of the State of Delaware.

## B. Defendant

6. Upon information and belief, Defendant Lightning Labs is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 720 University Avenue, #200, Palo Alto, California 94301.

# FACTS

## I. TARI LABS ANNOUNCES AND LAUNCHES THE TARI BLOCKCHAIN PROTOCOL

7. Tari Labs was founded in March, 2018. Two months later, on May 19, 2018, in a blog post entitled "Hello World," Tari Labs announced TARI®, a new open source blockchain protocol focused on digital assets.[1]

8. Although the protocol contained some features associated with cryptocurrency, such as the ability for users to mine TARI tokens, Tari Labs's plan for the protocol was more ambitious. It included a plan to develop the protocol to become a leading platform for the minting, sale and distribution of digital assets of various types, including non-fungible tokens, or NFTs.

9. As explained in its announcement blog, Tari Labs announced that they chose to focus the protocol on digital assets in general, and not just cryptocurrency, "because we see a huge opportunity to revolutionize the way these assets are owned, managed and transferred." *See* Exhibit A. Tari Labs further announced that the purpose of the protocol was "to fundamentally change the experience of owning, managing and transferring digital assets." *Id*.

10. Tari Labs announced its goal that the protocol would become a new digital assets ecosystem that works better for both issuers and consumers of digital assets:

> With Tari, creators of digital assets will be able to issue them as
> programmable non-fungible tokens on the Tari blockchain and trust
> that their rules will be enforced. Consumers will be able to use

---
[1] Prior to June 25, 2018, Tari Labs operated under the name Tari, LLC. Tari Labs, LLC offers goods and services both directly and through its parent and affiliated companies, AccessCoin, LLC, a Delaware limited liability company, and EMOJI ID, LLC d/b/a Yat Labs, a Delaware corporation ("Yat"), respectively.

>applications built on top of the Tari blockchain to more easily transfer their digital assets while respecting the rules set by issuers. Ultimately, our intended result is a more frictionless, lower cost digital asset ecosystem that benefits all constituents.

*Id*.

11. Tari Labs has continued to own and operate the protocol since the protocol's launch in April, 2020. During that time, Tari Labs has been the subject of press coverage in the cryptocurrency space, having been featured in online publications by CoinDesk, Nasdaq.com, the Merkle News, Fortune, Mashable, and Bitcoin Magazine, among others.

12. Tari Labs is the owner of record of the US trademark registration for **TARI ®**, U.S. Reg. No. 6701730 for "Cryptocurrency trading and exchange services, namely, providing a digital currency or digital token for use by members of an on-line community via a global computer network; cryptocurrency trading and exchange services, namely, providing a digital currency or digital token, incorporating cryptographic protocols, used to operate and build applications and blockchains on a decentralized computer platform and as a method of payment for goods and services and as a method of transfer of digital assets" in International Class 36, applied for February 26, 2018 and registered April 12, 2022. (the "TARI® Mark"). *See* Exhibit B.

13. Tari Labs has used the TARI® Mark continuously in US interstate commerce since its date of first use.

14. Since its launch on April 29, 2020, Tari Labs has continued to target the protocol, platform and related goods and services to be used by consumers of digital assets both inside and outside the realm of cryptocurrency.

15. Tari Labs's marketing materials and web site have focused on the protocol's high performance, the ease with which the platform can integrate with other software, the fact that the code is open-source, scalable, secure, private and stable. *See* Exhibit C.

16. Tari Labs markets the protocol and its TARI blockchain products and services to retail consumers of digital assets. Tari Labs defines the mission for its product is to become "the most useful decentralized platform that empowers **anyone** to create digitally scarce things people love." *See* Exhibit D (emphasis added). Likewise, "Tari is not just for developers or corporations, as it targets consumers as well." *See* Exhibit E.

17. In support of its mission, Tari Labs has established Tari Labs University, an open source, curated set of online materials developed by the Tari community to help facilitate knowledge transfer and education. Tari Labs's goal for Tari Labs University is to "create the best free, open source educational resource for the many technologies that comprise blockchain systems." *See* Exhibit F. Tari Labs actively solicits feedback and cooperation from the community of blockchain software developers in order to improve the protocol and platform. *See id.*

18. Tari Labs, through Yat, offers a range of services relating to the minting, sale and distribution of NFTs via platforms other than the TARI protocol, and is planning to make such services available for use on the TARI protocol and the TARI platform. Tari Labs, through Yat, offers a product called EMOJI ID™ for use in connection with blockchain wallets holding digital assets, including NFTs. This product creates a blockchain wallet address made of emojis. Utilizing emojis makes the wallet address easier to identify and recall than one with only numbers, which reduces the risk of the owner losing access to the wallet, and, therefore, the asset.

19. Tari Labs also offers, through Yat, a feature it calls PODS, which is a social layer that allows for NFT collectors to discuss NFTs.

20. Tari Labs is planning to make NFT-related technology available for use on or in connection platforms other than the TARI protocol and the TARI platform. One of the platforms targeted by Tari Labs for its suite of NFT-related services is the Lightning Network. The Lightning Network is a "second layer" network on the Bitcoin blockchain that allows for faster processing times of transactions involving digital assets, and more transactions per second than currently available on Bitcoin's "layer 1" network.

**II.    DEFENDANT LAUNCHES COPYCAT PROTOCOL WITH CONFUSING NAME**

21. Upon information and belief, Defendant was incorporated and founded in 2016.

22. Defendant is a technology company working to develop applications for use in connection with the Bitcoin blockchain.

23. Since its founding, Defendant has launched products and services for use in connection with:

   a. Cryptocurrency transactions, such products include a mobile wallet.

b.    Software that connects users who need access to bitcoin liquidity to those who have capital to deploy on Defendant's network.

c.    Software designed to making sale of goods and services and payment of goods on the blockchain easier to complete.

d.    Nodes for use on Defendant's network.

e.    Specifications that allows non-custodial Lightning wallets to verify transactions and to provide full synchronization to the Bitcoin blockchain.

*See* Exhibit G.

24.    On April 5, 2020 – more than two years after Tari Labs announced the protocol and its TARI® platform – Defendant issued an announcement under the name "Hello Taro" which announced that it would be launching its infringing TARO protocol.

25.    Defendant's TARO protocol is designed so that users can use digital assets, such as digitized currency, stablecoins[2] and NFTs, as part of transactions on the Bitcoin cryptocurrency blockchain.

26.    Defendant also offers users of its infringing TARO protocol the ability to mint, sell and distribute NFTs and other unique assets.

27.    Defendant publicly launched its test "alpha daemon" version of its infringing TARO protocol on or around September 28, 2022.  Defendant announced that the test version of TARO would be available on Bitcoin's layer 1 network, but that plans were underway to develop a version of TARO that would work on the Lightning Network.

28.    Defendant promotes its TARO protocol and platform by emphasizing the protocols' high performance, the ease with which the platform can integrate with other software, and the fact that the code is open-source, scalable, secure, private and stable.  *See* Exhibit H.

---

[2] "Stablecoins" are cyrptocurrencies whose value is tied to that of another currency, commodity or financial interest. Stablecoins are often used as an alternative to Bitcoin and other currencies, the value of which experiences greater volatility and renders such alternative unsuitable for common transactions.
https://www.investopedia.com/terms/s/stablecoin.asp

29. Defendant, like Tari Labs, targets the same general consumer group for its TARO protocol and platform as Tari Labs does for its TARI® platform: consumers without sophisticated knowledge of how blockchain and digital assets works.

30. Defendant claims that its ideal Taro user is "**somebody who doesn't want to understand the protocol or bitcoin.** It's just somebody who wants to transact cheaply and globally without holding bitcoin themselves." *See* Exhibit I (emphasis added).

31. Defendant, like Tari Labs, solicits feedback and cooperation from the community of blockchain software developers in order to improve its infringing TARO protocol and platform. Its website features a link to a Slack account for outside developers interested in working with Defendant. *See* Exhibit J.

32. The infringing TARO protocol and platform are designed to facilitate transactions involving a wide range of digital assets, including stablecoins and the minting (creation), sale and transfer of NFTs, including digital asset transactions on the Lightning Network. As explained in its "Hello Taro" blog post:

> A developer mints a new Taro asset by making an on-chain transaction that commits to special metadata in a Tap[r]oot output. When minting a new asset, the Taro daemon will generate the relevant witness data, assign the asset to a private key held by the minter, and broadcast the newly created bitcoin UTXO to the bitcoin network. This new outpoint becomes the genesis point of the newly minted asset, acting as its unique identifier. Taro minting has a few key design attributes: verifiability, ability to issue fungible assets like currencies, and scalability.

*See* Exhibit H.

### III. DEFENDANT'S INFRINGING TARO GOODS AND SERVICES ARE LIKELY TO MISLEAD CONSUMERS

33. Defendant's use of TARO (the "TARO") on and in connection with the cryptocurrency services it offers is highly likely to confuse and mislead consumers. The relevant likelihood of confusion factors enunciated by the Ninth Circuit in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*"), including strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, similarity of marketing channels used, type of goods and degree of care likely to be exercised by purchasers, defendant's intent in

selecting the mark, and the likelihood of expansion of the product lines. Applying relevant factors to Defendant's use of the TARO to market and sell cryptocurrency services demonstrates convincingly a likelihood of consumer confusion, and therefore infringement of the TARI® Mark

34. *Strength of the Mark*. TARI is an inherently distinctive and therefore strong mark, which is afforded the widest ambit of protection from infringing uses. *Id*. at 349; *see, e.g., National Lead Co. v. Wolfe*, 223 F.2d 195, 199 (9th Circuit), *cert. denied*, 350 U.S. 883 (1955) (DUTCH BOY mark found inherently distinctive). The TARI® Mark has been used in interstate commerce for over four (4) years, and has developed significant goodwill and reputation during that period.

35. *Proximity of the Goods*.  Each of the TARI® and TARO marks purport to involve, among other things, cryptocurrency trading and exchange services for both digital currency and digital tokens. The services offered by Defendant – namely, creating a blockchain protocol whereby consumers can exchange cryptocurrency and other digital assets – falls directly within the range of services protected by the trademark registration for TARI. Additionally, as discussed above, the TARI protocol and TARO protocol both offer services related to the minting, sale and distribution of NFTs.

36. Where, as here, both the TARI protocol and the TARO protocol both provide services in the field of cryptocurrency and digital assets, the goods and services are considered similar for infringement purposes. *See, e.g., Lexington Mgmt. Corp. v. Lexington Cap. Partners*, 10 F. Supp. 2d 271, (S.D.N.Y. 1998) (likelihood of confusion "great" where the parties did not offer identical services or products, but "both operate in the same discrete 'investment securities' field"); *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) ("the nature of the financial investment market renders the proximity of the two compan[ies'] services particularly troubling in likelihood-of-confusion terms").

37. *Similarity of the Marks*: The TARI® mark and infringing TARO mark are highly similar in sight and sound. Both are four-letter, two-syllable words, sharing the same first three letters in identical order. The only difference is that Plaintiff's TARI® mark ends in "I", whereas Defendant's infringing TARO mark ends in an "O." Where, as here, the majority of the marks are

identical except for a slight change at the end of the mark, the marks are considered infringingly similar. *See, e.g., In re Detroit Athletic Co.*, 903 F.3d 1279, 1303 (Fed. Cir. 2018) (affirming holding that DETROIT ATHLETIC CO. and DETROIT ATHLETIC CLUB are "nearly identical," where each consisted of identical phrase "DETROIT ATHLETIC" followed by "one-syllable 'C' words"); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1060 (Fed. Cir. 1985) (CASH MANAGEMENT ACCOUNT and THE CASH MANAGEMENT EXCHANGE found similar); Synoptek, LLC v. Synaptek Corp., 309 F. Supp. 3d 825, 836 (C.D. Cal. 2018) (finding that SYNOPTEK and SYNAPTEK are "virtually identical in appearance and only differ by one single letter, 'O' versus 'A.'). As the owner of a federally registered trademark, Tari Labs is entitled to exclusive use of its mark in connection with the services for which it is registered.

38.  *Similarity of Marketing Channels Used.*  Tari Labs and Defendant market their competing TARI® vs. TARO services and technologies to many overlapping, similar and/or identical audiences, including developers and retail consumers.  The protocols and/or platforms are featured and discussed on the same publications, for instance, Bitcoin Magazine.  Where, as here, similar goods and services are sold under nearly identical names to the same target market, consumer confusion is likely.  *FAZE Apparel, LLC v. Faze Clan, Inc*., No. 218CV02052RGKJEM, 2018 WL 3830027, at *5 (C.D. Cal. May 22, 2018) (holding that FAZE APPAREL and FAZE CLAN were likely to confuse the public given both brands target young male consumers and "make heavy use of a similar marketing channel: the Internet.").

39.  *Degree of Care Likely to be Exercised by Consumers.*  The TARI® Mark and TARO are discussed by, marketed to, and used by, a wide variety of users, many of which are unsophisticated and will exercise little degree of care in seeking to type or identify a particular protocol.  This is particularly true where the TARI and TARO names are communicated orally, or inputted while using mobile applications or text – given the extreme one-character similarity. See *infra* at ¶¶16 and 32.

40.  *Defendant's Intent in Selecting the Mark.*  Defendant chose its infringing TARO name for its blockchain platform and protocol two years after Tari launched its TARI® platform and applied to register the mark with the PTO. Defendant nonetheless adopted TARO with full

knowledge and understanding of Tari and the TARI® mark, and that in so doing it would cause confusion while allowing Defendant to capitalize on and trade upon the goodwill associated with the TARI® Mark.

41. *Likelihood of Expansion of the Product Lines.* Tari Labs' and Defendant's services are both currently in a field of rapidly developing technologies. Cryptocurrency trading and exchange services involve both traditional cryptocurrencies such as Bitcoin, and other digital assets, including NFTs, tokens, and stablecoins. The parties are involved in developing novel and new solutions and platforms and will, based on information and belief, continue to expand and diversify the services they offer. This will also create areas for future potential confusion and interaction between the parties' services and relevant users, developers and consumers.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Federal Trademark Infringement – 15 U.S.C. § 1114)

42. Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as if fully set forth herein.

43. Plaintiff owns all right, title, and interest in the TARI® Mark, which it has continuously used in US interstate commerce since 2020.

44. Through the conduct alleged above, Defendant's unauthorized use in commerce of the TARO for cryptocurrency services infringes the TARI® Mark and violates 15 U.S.C. § 114 because the TARO is confusingly similar to the TARI® Mark. Defendant's use of the TARO creates the erroneous impression in consumers' minds that Defendant's protocol and other products and services have developed, approved, sponsored, or endorsed by, or is in some way affiliated with, Plaintiff and the TARI® Mark.

45. On information and belief, Defendant chose to use the TARO with the intent to capitalize on the reputation of and goodwill associated with Plaintiff and the TARI® Mark.

46. Defendant's infringement is causing irreparable harm to Plaintiff by confusing consumers and enabling Defendant unlawfully to profit by trading off of Plaintiff's TARI® Mark.

47. Plaintiff has no adequate remedy at law for Defendant's misconduct. Unless Defendant is enjoined from continuing its infringement, consumers will continue to be confused and Plaintiff's injuries will continue to occur.

48. Defendant has profited from their infringement, and Plaintiff has suffered damages in an amount to be proven at trial.

49. Plaintiff is also entitled to recover from Defendant any gains, profits, and advantages as a result of Defendant's infringement, in an amount to be proven at trial.

50. Defendant's intentional and willful misconduct renders this an "exceptional case," entitling Plaintiff to treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Trademark Infringement – California Common Law)

51. Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as if fully set forth herein.

52. Since 2020, Plaintiff has continuously used the TARI® Mark to identify its products and services in California. The TARI® Mark is inherently distinctive and serves to identify the origin of the products and services sold by Plaintiff. Thus, Plaintiff has enforceable rights in and to the TARI® Mark under California law.

53. Through the conduct alleged above, Defendant's unauthorized use in commerce of the TARO infringes Plaintiff's rights in its TARI® Mark because it renders Defendant's products and services confusingly similar to the products and services sold under the TARI® Mark.

54. Defendant's unauthorized use of the TARO creates the erroneous impression that Defendant's Infringing Fund has been developed, approved, sponsored, endorsed, or is in some way affiliated with, Plaintiff and the goods and services offered under the TARI® Mark.

55. Defendant's unlawful activities in the state of California and/or directed at California consumers have caused Plaintiff's irreparable injury. Unless the Court enjoins such conduct, Defendant will continue its intentional infringement to the continued, irreparable injury of Plaintiff. This injury includes a reduction in the distinctiveness of the TARI® Mark, as well as

injury to Plaintiff's reputation that cannot be remedied through damages. Plaintiff has no adequate remedy at law.

56. In view of the foregoing, Plaintiff is entitled to a preliminary and permanent injunction restraining and enjoining Defendant from further marketing and selling goods and services under the TARO in the state of California.

57. Plaintiff is also entitled to recover Defendant's profits, Plaintiff's ascertainable economic damages, and Plaintiff's costs of suit. Defendant's willful infringement of Plaintiff's common-law rights in California, without excuse or justification, entitles Plaintiff to its reasonable attorneys' fees.

58. In addition to all equitable relief that may be available, Plaintiff seeks an award of Defendant's unlawful gains, profits and money obtained through its unlawful conduct, and an award of punitive damages, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**(Unfair Competition – Cal. Bus. & Prof. Code, § 17200 *et seq.*)**

59. Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as if fully set forth herein.

60. Defendant's unauthorized use of the TARO in a manner that is likely to confuse and deceive consumers is unlawful, unfair, and/or fraudulent and constitutes unfair competition within the meaning of California Business & Professions Code § 17200 *et seq.*

61. Defendant has unlawfully profited from its unfair competition, and Plaintiff has suffered damages in an amount to be proven at trial.

62. Defendant's infringement is causing irreparable harm by confusing consumers and enabling Defendant unlawfully to profit by trading off of Plaintiff's TARI® Mark. Plaintiff will continue to suffer such harm unless Defendant's infringing conduct is enjoined by this Court.

63. In addition to all equitable relief that may be available, Plaintiff seeks an award of Defendant's unlawful gains, profits and money obtained through its unlawful conduct, and an award of punitive damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment against Defendant as follows:

A.  Preliminarily and permanently enjoin Defendant from using any version of the TARO in connection with the sale, offering to sell, advertising, or marketing of cryptocurrency funds in the United States.

B.  Award Plaintiff its amount of damages and/or the amount of Defendant's profits arising from Defendant's use of the TARO in the United States, pursuant to 15 U.S.C § 1117.

C.  Award Plaintiff three times their actual damages, as well as the costs of this action, in accordance with 15 U.S.C § 1117.

D.  Find this action to be an "exceptional case" such that Plaintiff be awarded their reasonable attorney's fees in accordance with 15 U.S.C § 1117.

E.  Award Plaintiff punitive damages as allowable.

F.  Award Plaintiff such other and further relief as this Court deems just and proper.

Dated:  December 8, 2022

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:  */s/ J. Noah Hagey*
        J. Noah Hagey

*Attorneys for Plaintiff*
*Tari Labs, LLC*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a jury trial of all claims and causes of action triable before a jury.

Dated:  December 8, 2022                Respectfully submitted,

BRAUNHAGEY & BORDEN LLP


By:   */s/ J. Noah Hagey*
          J. Noah Hagey

*Attorneys for Plaintiff*
*Tari Labs, LLC*