

66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

650 California Street
San Francisco, CA 94108
+1 415 738 5700

February 22, 2023

BY ECF

The Honorable William H. Orrick
United States District Court for the Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

***Tari Labs, LLC v. Lightning Labs, Inc.* - Case No. 3:22-cv-07789-WHO**

Dear Judge Orrick:

We represent Defendant Lightning Labs ("Lightning Labs") in the above-referenced case.  We first received notice earlier today of Plaintiff Tari Labs' ("Tari Labs") intent to file an *ex parte* motion for a temporary restraining order ("TRO"), and have received copies of Tari Labs' briefing as it was filed on ECF into this evening.  We write to respectfully request that Your Honor deny Tari Labs' request for *ex parte* relief and either (1) deny Tari Labs' request for a TRO and order the parties to confer regarding a schedule for briefing Tari Labs' motion for a preliminary injunction, along with any necessary expedited discovery; or (2) provide Lightning Labs a deadline no earlier than Monday, February 27, 2023, to respond to Tari Labs' request for a TRO.[1]

As further set forth below, setting aside that Tari Labs is not likely to succeed on the merits, as there is no possibility of confusion here, there is also no urgency that could justify the extraordinary relief of a TRO.  The TARO protocol that is the subject of Tari Labs' complaint was announced in April 2022 – 10 full months ago; Tari Labs' co-founder has been aware of TARO since that same time; and code for a test version of the TARO protocol (the apparent basis for this motion) has been available since September 2022.  Given the significant factual disputes in this case, and complete lack of urgency with which Tari Labs has proceeded, there is no reason for the Court to short-circuit appropriate fact development and briefing prior to any interim relief.

I.      **Background: Timing of the Instant Dispute**

In April 2022, Lightning Labs publicly announced TARO, a software protocol for developers to use to issue new digital assets on the Bitcoin blockchain and transact

---

[1] The undersigned counsel are each defending significant depositions in an unrelated case on February 22 and 23, 2023, and Ms. Bannigan has an in-person hearing in the Southern District of New York on February 24, 2023.  Given there is no urgency here, a reasonable briefing schedule is appropriate.

The Honorable William H. Orrick           2                February 22, 2023

with them over the Lightning Network.[2]  This announcement was covered by a number of major news outlets, including Bloomberg.[3]  Tari Labs' co-founder, Naveen Jain, became aware of TARO relatively shortly thereafter, and in April 2022 was sending messages to Lightning Labs' CEO, Elizabeth Stark, about the dispute that now forms the basis for Tari Labs' request for a TRO:



In September 2022, Lightning Labs publicly released initial code for TARO, allowing developers to create, send, and receive TARO assets on the Bitcoin test network.[4]  The release once again garnered significant press attention.  Tari Labs

---

[2]   Ryan Gentry, *Announcing Taro: A New Protocol for Multi-Asset Bitcoin and Lightning* (April 5, 2022), https://lightning.engineering/posts/2022-4-5-taro-launch/.

[3]   *See, e.g.*, Sonali Basak, *Valor, Brevan Howard Back Lightning Labs to 'Bitcoinize the Dollar,'* Bloomberg (Apr. 5, 2022), https://www.bloomberg.com/news/articles/2022-04-05/valor-brevan-howard-back-lightning-to-bitcoinize-the-dollar.

[4]   Michael Levin, *Hello Taro: Building the (Tap)Root of the World's Financial Network with Bitcoin* (Sept. 28, 2022), https://lightning.engineering/posts/2022-9-28-taro-launch/.

The Honorable William H. Orrick             3                     February 22, 2023

nevertheless waited more than two additional months more before filing their Complaint in this action in December 2022.

Now, fully 10 months after becoming aware of their alleged claims and five months after the initial release of TARO code, Tari Labs asks this Court to grant the extraordinary measure of an *ex parte* TRO to prevent Lightning Labs from continuing the software development that is core to its business and that it has been publicly engaged in for months.

In an attempt to manufacture urgency, Tari Labs points to a series of statements – some of which are also more than two months old – that do not support the narrative Tari Labs seeks to create. Having ignored Lightning Labs' announcement of the TARO protocol in April 2022, and Lightning Labs' release of an initial version of code for the TARO protocol nearly five full months ago, in September 2022, Tari Labs now claims Lightning Labs is "accelerating" based largely on statements about updates to that already-available software code. In sum, Tari Labs' evidence of this "acceleration" is limited to:

- Two developer community conference calls from mid-December 2022 and late January 2023;
- A 23-page Substack newsletter sent nearly a month ago (that Tari Labs misleadingly describes as a "press release") that notes, on page 13 and among dozens of community updates, that Wolf, a non-party to this case, publicly launched its website for a "LN [Lightning Network]/Taro startup accelerator" that was originally announced in October 2022;[5] and
- A speech from early February 2023 about how a new *version* of TARO (i.e., updates to the software that was first publicly released in September 2022 and has been continually publicly updated since that time) may be released "in like a month or so"; and
- A Tweet from early February 2023 that starts by noting that the last release of TARO was in "November 2022" and that the "next release" will have additional features.[6]

**II.      Argument**

Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v.*

---

[5]   PR Newswire, *Stone Ridge Holdings Group Launches Wolf, a NYC Startup Accelerator Dedicated to Lightning* (Oct. 26, 2022), https://www.prnewswire.com/news-releases/stone-ridge-holdings-group-launches-wolf-a-nyc-startup-accelerator-dedicated-to-lightning-301659469.html.

[6]   Olaloluwa Osuntokun (@roasbeef), Twitter (Feb. 6, 2022), https://twitter.com/roasbeef/status/1622717412482187282?s=20.

The Honorable William H. Orrick　　　　　　4　　　　　　　　　February 22, 2023

*Nat. Res. Def. Council Inc.*, 555 U.S. 7, 20 (2008).  This is especially true with regard to *ex parte* TROs, which may be issued only if "specific facts in an affidavit or a verified complaint clearly show that ***immediate and irreparable*** injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A) (emphasis added).  The Supreme Court has long made clear that the circumstances justifying an *ex parte* TRO are very limited:

> The stringent restrictions imposed . . . by Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974).

Courts in the Ninth Circuit have "generally confined *ex parte* injunctive relief to two situations: (1) where identity of the adverse party is unknown or because a known party cannot be located in time for a hearing; or (2) a 'narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'"  *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1096 (N.D. Cal. 2012) (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)); *see also, e.g.*, *Harnden v. Perez*, No. 21-CV-9231 (LHK), 2021 WL 7367123, at *3 (N.D. Cal. Dec. 8, 2021) (denying *ex parte* TRO where the plaintiff did "not explain why relief [could] not wait until defendants [were] allowed to be heard"); *Kovalenko v. Epik Holdings, Inc.*, 22-CV-1578 (TL), 2022 WL 16737471, at *3 (W.D. Wash. Nov. 7, 2022) (denying *ex parte* TRO where the plaintiff waited over nine months to seek relief, which confirmed that there was "no danger of *immediate* injury sufficient to justify an *ex parte* TRO").

Despite Tari Labs' misleading styling of their request, a TRO here would not preserve the status quo – it would reverse 10 months of public activity by Lightning Labs and other developers.  It is clear from Tari's moving papers that neither of the *Rovio* situations applies: Tari Labs is fully aware of Lightning Labs' identity and has offered no argument that notice to Lightning Labs would render this action fruitless.

Tari Labs has also failed to identify any "immediate and irreparable injury, loss, or damage" that will occur before Lightning Labs can be heard in opposition.  Fed. R. Civ. P. 65(b)(1).  As outlined above, Tari Labs waited for months to file suit against Lightning Labs, and 10 full months after becoming aware of TARO to seek a TRO.  Though it claims that Lightning Labs has "accelerate[d] its plans to "launch" TARO in the meantime, it is mistaken.  As Lightning Labs will make clear in further

The Honorable William H. Orrick               5                    February 22, 2023

briefing, the so-called "launch" of TARO is simply a matter of ordinary software code updates: new "releases" of the test version of the TARO protocol for the Bitcoin test network that has been publicly available since September 2022 and has been continuously updated since that time. Lightning Labs may continue to release and update code – as it has multiple times over the past five months – but this does not mean that it is accelerating plans for a full commercial launch or that a launch is even imminent (it is not). Although Tari Labs may not want Lightning Labs to continue working to develop its protocol, it has not demonstrated any "immediate" harm justifying the significant disruption of Lightning Labs' business that it seeks – and certainly not without at least giving Lightning Labs the chance to respond.

Lightning Labs also respectfully submits that the factual disputes in this case make it particularly ill-suited for the extreme remedy of a TRO. As Lightning Labs noted in its Answer, Tari Labs' website publicly disclaims any ownership of the Tari project that forms the basis of its Complaint, noting that "It so happens that some Tari Labs employees spend a significant portion of their time contributing to the Tari project, but **this does not mean that Tari Labs owns or controls the project** in any meaningful way."[7] Similarly, Tari Labs' brief is replete with factual misstatements – such as characterizing TARO as a "blockchain" which it is not and will never be, or suggesting that the audience for the TARO protocol is ordinary consumers when it is clearly a "developer" protocol and tool.[8] Appropriately tailored expedited discovery prior to any preliminary injunctive relief is necessary to ensure the Court has an appropriate, not inaccurate and one-sided, factual record before granting such an extraordinary remedy.

Lightning Labs therefore respectfully requests that Your Honor either (1) deny Tari Labs' request for an *ex parte* TRO and order the parties to confer on a schedule for briefing Tari's preliminary injunction motion, including any necessary expedited discovery; or (2) set a reasonable briefing schedule for the TRO. *Cf. Rovio Ent.*, 907 F. Supp. 2d at 1101 (denying the plaintiff's motion for an *ex parte* TRO, construing the motion as one for a preliminary injunction, and setting a briefing schedule).

Respectfully submitted,

*/s/ Megan K. Bannigan*

Megan K. Bannigan
Christopher S. Ford

---

[7]  Tari Labs, Frequently Asked Questions, https://tarilabs.com/faq/.

[8]  *See* Levin, *supra* note 4 ("We're incredibly excited to get this open source alpha daemon code into the hands of the developer community to build with, and hope this progress gets people excited for what's to come.").