1   J. Noah Hagey, Esq. (SBN: 262331)
      hagey@braunhagey.com
2   BRAUNHAGEY & BORDEN LLP
    351 California Street, 10th Floor
3   San Francisco, CA 94104
    Telephone: (415) 599-0210
4   Facsimile: (415) 276-1808

5   Mitchell C. Stein, Esq. (*Pro Hac Vice*)
      stein@braunhagey.com
6   Kirsten Jackson, Esq. (*Pro Hac Vice*)
      dooley@braunhagey.com
7   BRAUNHAGEY & BORDEN LLP
    118 W. 22nd Street, 12th Floor
8   New York, NY 10011
    Telephone: (646) 829-9403
9   Facsimile: (646) 403-4089

10  ATTORNEYS FOR PLAINTIFF
    TARI LABS, LLC

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15

16  TARI LABS, LLC,                          Case No. 3:22-cv-07789-WHO

17              Plaintiff,                    **PLAINTIFF TARI LABS, LLC'S REPLY
                                              IN SUPPORT OF EX PARTE
18         v.                                 APPLICATION FOR TEMPORARY
                                              RESTRAINING ORDER TO PRESERVE
19  LIGHTNING LABS, INC.,                     THE STATUS QUO AND MOTION FOR
                                              PRELIMINARY INJUNCTION**
20              Defendant.
                                              Date:
21                                            Time:
                                              Judge:        Hon. William H. Orrick
22                                            Courtroom:     Via Zoom videoconference

23

24

25

26

27

28
                                                          Case No. 3:22-cv-07789-WHO

Plaintiff Tari Labs LLC ("Tari") respectfully submits this reply in brief response to Defendant's opposition to plaintiff Tari's Ex Parte Application for Temporary Restraining Order to Preserve Status Quo and Motion for Preliminary Injunction (the "Motion") (Dkt. 25).  As summarized below, and further explicated in the Motion, defendant Lighting Labs' entire defense to this infringement action and Tari's requested stand-still order is premised on a fundamental misrepresentation, which their own opposition letter baldly repeats:  namely, that Defendant's impending release and launch of a fully operational TARO protocol will not be "consumer-facing" or interact in any way with the TARI® platform and related blockchain applications and services. This is demonstrably and clearly false, as explicated in the detailed market-based vignettes and examples set forth in Tari's opening brief, which illustrate with clear examples and even demonstratives how Defendants' own recent public admissions and statements about their project means that there will be massive and certain consumer confusion and a swamping of the TARI® trade name.  By contrast, Defendant has not articulated any harm it would face if their imminent launch of its new version of TARO were delayed briefly until the Court could rule on Tari's motion for preliminary injunction.

The TARO protocol is a Trojan horse whose doors should not be allowed to open.

**A.    Clear Urgency Exists**

Defendant first argues that there is no urgency in deciding Tari's motion. But Tari's motion demonstrated – and Defendant does not deny – that Defendant intends to launch a new version of its protocol with "everything needed to get off the ground" by early or mid-March.  Nothing in Defendant's response rejects that statement.

If that launch happens, damage to consumers and to the TARI® brand will increase significantly.  And, equally important, Defendant should not be permitted to rely on its misstatements and misrepresentations to Tari about the scope of its project:  where it attempted to downplay and hide its true plans, while secretly (and then more recently, publicly) planning a comprehensive blockchain protocol platform which Tari's users and the public will frequently see and interact with.

PLAINTIFF'S NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER TO
PRESERVE THE STATUS QUO AND MOTION FOR PRELIMINARY INJUNCTION

Nor is there merit to Defendant's contention that Tari somehow delayed in bringing this motion. Courts in this Circuit recognize that a trademark owner is entitled to investigate its claims and attempt to resolve them informally before filing suit. *Warner Bros. Ent. v. Glob. Asylum, Inc.*, 2012 WL 6951315, at *21 (C.D. Cal. Dec. 10, 2012), *aff'd*, 544 F. App'x 683 (9th Cir. 2013) ("In the Ninth Circuit, a delay of several months that gives the plaintiff an opportunity to investigate its claim and attempt to resolve the dispute out of court is not unreasonable such that injunctive relief should be denied on that ground alone"). That is what Tari did here – attempting to persuade Defendant to abandon its planned infringement, filing suit, and ultimately bringing this motion when it became clear that Defendant was escalating its infringement and proceeding toward a full-scale launch.

Under similar circumstances, even after passage of time following notice to plaintiff or filing of suit, temporary restraints are an appropriate remedy. *See MKS Instruments, Inc. v. New Power Plasma*, No. 3:09-CV-02297,  Judge Jeffrey White (granting TRO despite over three weeks delay in a patent infringement case); *3M Company v. Ugly Juice, LLC*, Case No. 5:21-cv-02338-EJD, Judge Edward Davila (granting TRO and PI after nearly three-week delay in a case regarding counterfeiting safety products); *D. Light Design v. Boxin Solar Co., Ltd.*, No. C-13-5988 EMC, Judge Edward Chen (granting second application for TRO after a month delay in a patent and trademark infringement case regarding solar light and power products).

The TRO is timely and based on new information and supported by credible evidence and a survey which took some time to develop and confirm Tari's concerns about market confusion.

**B.    The Trojan Horse:  Defendant's Admitted Misrepresentations Hoping to Induce Tari to Allow TARO to Launch**

Defendant points to a text message exchange between Tari's CEO and Defendant's CEO as evidence of Tari's awareness of TARO. Far from helping Defendant's cause, this exchange shows that Defendant has proceeded recklessly in the face of explicit warnings that its use of the infringing "TARO" mark would cause confusion in the marketplace.

More problematic for Defendant, the exchange shows that Defendant was lying to Tari. The soon-to-be-launched TARO protocol would most definitely be public-facing.  The Court need

only review Defendant's emphatic new tweets, blog posts and YouTube video to appreciate how truly "public" Defendant intends the protocol. The evidence now clearly shows that both Tari and Defendant market their competing TARI® and TARO products and services to users interested in creating and transferring digital assets on the blockchain. (Jain Declaration ¶ 21.)

Defendant claims, for example, that its ideal user is "somebody who doesn't want to understand the protocol or bitcoin. It's just somebody who wants to transact cheaply and globally without holding bitcoin themselves." (Jain Declaration, ¶ 22.). Their CEO, Elizabeth Stark, told CNBC in reference to TARO that that "[i]t's one of those things where people don't really know how the credit card system works – and it just works." (Jain Decl. Exh. 13). Also, Tari has shown widespread overlap of marketing and social media efforts by both companies. Tari and Defendant offer their software on GitHub, an online developer platform that releases open-source software, and facilitates collaboration on software development, including version control, task management, and discussion boards. (Jain Decl. ¶ 20.) They utilize the same social media platforms, including Twitter, Reddit, Messari, GitHub, Freenode, Substack, and Slack. (Id.) They also appear in the same industry press publications, both appearing in Bitcoin Magazine and other outlets. (Id. ¶ 26.) And both are marketed at the same trade shows and conferences, including speaking appearances by both companies' leaders as the Magical Crypto Conference in back-to-back years. (Id. ¶ 27.) (See Brief, pages 18-19.)

Further, Tari's Motion demonstrates with crystal clarity at least five specific ways that Tari will interact with end-users and create dangerous confusion for TARI® and the public at large. The Court need only review the screen shots and demonstratives appended to Tari's Motion and the Declaration of Naveen Jain to comprehend the full force of what is set to be unleashed from Defendant's Trojan horse. TARI® and TARO will interact in numerous ways when it comes to NFTs, including creating, browsing, purchasing, and selling NTFs. These NFTs will be designated TARI® NFTs or TARO NFTs, and this specification will indicate and dictate which applications, such as mobile wallets, the underlying NFT is compatible with. (Jain Declaration ¶¶ 36-38.) This will be the case when creating smart contracts, users will be faced to decide which protocol it would like to utilize, as they compete side-by-side on services like OpenZeppelin. (*Id.* ¶ 39.)

1    Developers will be confused too. In relying on tools such as those provided by Alchemy, a popular

2    website for developers, they may either select incompatible programming tools or start coding a

3    software application that will be integrated with the incorrect protocol. (Id. ¶ 40.)

4           **C.      Defendant's Misleading Attacks On Tari's Federally-Registered TARI® House
                     Mark**

5           Tari has been using its mark in commerce since April 29, 2020 and has been using it

6    continuously since then.  It applied to reserve the mark with the PTO in 2018, and thereafter filed

7    its statement of commercial use in 2022.  The PTO subsequently awarded the TARI® mark to Tari

8    on April 12, 2022.

9           Defendant's own Answer (Dkt. 24) does not dispute these facts and thus concedes that Tari

10   has priority.

11          Defendant's TARO protocol, on the other hand, was launched in late September, 2022,

12   nearly two and a half years later.  Considering (i) the relatively small size of the industry (ii) that

13   principles on both sides knew each other professionally, and (iii) that Tari's trademark application

14   for TARI had been on file at the US Trademark Office, where it is easily and publicly searchable,

15   since 2018, it defies belief that Defendant was not aware of Tari and its TARI® mark prior to

16   selecting the name TARO.  Setting aside the obvious fact that defendant has known about Tari and

17   its mark for a long time, it unquestioningly became aware of the infringement when Tari sent its

18   first demand letter dated September 12, 2022, approximately 5 months ago.

19          Similarly, Defendant's arguments about the strength of the TARI® mark are makeweight.

20   As a registered mark, TARI® is entitled to a presumption that it is a valid trademark nationwide.

21   Defendant's unsupported arguments in its letter do not overcome that presumption.  Defendant

22   could have opposed the trademark application while it was pending in the US Trademark Office,

23   but did not do so. And Tari's motion included a detailed declaration setting forth extensive

24   evidence of Tari's use in commerce predating Defendant's adoption of its infringing mark.

25          **D.      Defendant Ignores the Vast Inequity of Allowing Defendant to Proceed to a
                     Launch in early March Versus Preserving the Status Quo Pending a Full
                     Hearing on the Merits**

26

27

28

                                                      4                    Case No. 3:22-cv-07789-WHO

1   Finally, Defendant does not engage with the ample evidence identified by Tari

2   demonstrating that Tari will suffer irreparable harm if Defendant is permitted to proceed with its

3   full-scale commercial launch. These include damage to Tari's goodwill and reputation, destruction

4   of the value of the Tari trademark, and initial interest confusion and missed market opportunities.

5   (Jain Decl. ¶¶ 41-46; Palmatier Expert Decl. ¶¶ 84-102.)

6   **E.      Defendant Will Not Be Harmed by Grant of the TRO**

7   The TRO Tari seeks will enjoin Defendant from launching its new version of TARO

8   pending the outcome of Tari's motion for preliminary injunction.  During the pendency of the

9   TRO, Defendant would remain free to continue development of its protocol, but without public-

10  facing promotion of the name TARO.  When the minor inconvenience to Defendant of this delay is

11  compared to the likelihood of confusion and damage to consumers and the TARI® brand if

12  Defendant's infringement continues, it becomes clear that a TRO is appropriate.

13  For the foregoing reasons, Tari's motion should be granted.

14

15  Dated:  February 22, 2023                  Respectfully submitted,

16                                              BRAUNHAGEY & BORDEN LLP

17
                                                By:   */s/ J. Noah Hagey*
18                                                         J. Noah Hagey

19                                              *Attorneys for Plaintiff*
20                                              *Tari Labs, LLC*

21

22

23

24

25

26

27

28